# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

Ray L. Olin and Carole J. Olin, husband )
and wife as joint tenants; Paul Johnson and )
Candace Johnson, husband and wife; Neil R. )
Slavick; Dennis Olin and Carol Olin, )
husband and wife as joint tenants; David F. )
Heid; Tami A. Heid; Brent Heid; Michele )
Burger; James Bahm; Gary A. Haugen and )
Melinda K. Haugen, husband and wife as )
joint tenants; Timothy Lee Johnson and )
Thomas Wesley Johnson Partnership; )
Lee L Ingalls; Matthew E. Ingalls; )
Thomas J. Ingalls; Robert J. Slavick; )
Jacquelyn M. Slavick; and Clark A. Norton )
and Debra D. Norton, husband and wife, )
                               )
              Plaintiffs, )
      vs. )
                               )
Dakota Access, LLC and Contract Land )
Staff, LLC, )
                               )
              Defendants. )

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS AND MOTION
FOR JUDGMENT ON THE
PLEADINGS**

Case No. 1:17-cv-007

---

Before the Court is Defendant Contract Land Staff, LLC's ("CLS") Rule 12(b)(6) motion to dismiss filed by on February 24, 2017. See Docket No. 10. The Plaintiffs filed a response in opposition to the motion on March 16, 2017. See Docket No. 13. CLS filed a reply brief on March 30, 2017. See Docket No. 15. Also before the Court is a Rule 12(c) motion for judgment on the pleadings filed by Defendant Dakota Access, LLC ("Dakota Access") on April 6, 2017. See Docket No. 19. The Plaintiffs filed a response in opposition to the motion on April 26, 2017. See Docket No. 22. Dakota Access filed a reply brief on May 10, 2017. See Docket No. 23. For the reasons set forth below, the motion to dismiss and motion for judgment on the pleadings are granted.

1

## I.    BACKGROUND

The factual background is largely taken from the Plaintiffs' amended complaint. See Great Plains Trust Co. v. Union Pac. R.R. Co., 492 F.3d 986, 990 (8th Cir. 2007) (On a motion to dismiss for failure to state a claim upon which relief can be granted, the facts in the complaint must be taken as true).  The Plaintiffs are a group of twenty-one individuals and one general partnership who own real property located in Morton County, North Dakota.  Defendant Dakota Access is a limited liability company organized under the laws of the State of Delaware, having its principal place of business in Texas.  Defendant CLS is a limited liability company organized under the laws of the State of Indiana, having its principal place of business in Texas.

The Dakota Access Pipeline is a pipeline that runs approximately 1,172 miles and is designed to transport domestically produced light sweet crude oil from the Bakken and Three Forks production areas in North Dakota to terminal facilities in Patoka, Illinois.  Seventy-one miles of the Dakota Access Pipeline travels through Morton County, North Dakota.  Dakota Access needed to obtain easements from the Plaintiffs so its pipeline could lawfully travel through Morton County. Dakota Access approached the Plaintiffs around August 2014 regarding the easements at issue in this case. Dakota Access employed CLS to make contact with the Plaintiffs and negotiate the easements. Dakota Access offered each of the Plaintiffs the same agreement in exchange for the easements. Dakota Access offered a price of $180 per rod, with a 20% signing bonus.  A rod is equal to 16.5 feet.  Together with the 20% signing bonus, the total offer equated to $216 per rod.

The Plaintiffs contend Dakota Access and CLS made numerous misrepresentations to them during the easement negotiation process.  Specifically, they contend Dakota Access and CLS told them they had thirty days to sign the easement or they would lose the 20% bonus offer.  Additionally,

Dakota Access and CLS informed the Plaintiffs that $216 was the best price that would ever be offered to landowners in Morton County; that they would lose the 20% signing bonus if the neighbors did not sign the easement agreements; that if they did not sign the easements, their land would be condemned by eminent domain; that they would not receive a better deal by eminent domain, and they would receive less money, or "basically nothing" at all through the eminent domain process; that if they did not accept the price of $216 per rod and grant the easements, the pipeline would just be moved to different land; and, that they should sign the easement agreements right away because the price of oil was going down and the pipeline may not be constructed. The Plaintiffs allege they signed their easement agreements based on these representations made by CLS on behalf of Dakota Access.

The Plaintiffs allege these representations were deceptive and unfair tactics and designed to induce them to sign the easement agreements at a lower price than other landowners in Morton County. The Plaintiffs contend other unnamed and unidentified landowners in Morton County received more than $216 per rod from Dakota Access for pipeline easements. The Plaintiffs further allege that because other Morton County landowners received a better price, the representations made by CLS and Dakota Access were false, misleading, deceptive, and unfair.

The Plaintiffs commenced this action in federal court on January 1, 2017. See Docket No. 1. An amended complaint was filed on January 31, 2017. See Docket No. 4. The amended complaint raises four claims against the Defendants. The first claim alleges Dakota Access violated Section 49-22-16.1 of the North Dakota Century Code by engaging in unfair tactics in acquiring land easements when negotiating with the Plaintiffs. The second claim asserts that Dakota Access committed fraud by misrepresenting material facts when negotiating the terms of the easements in

question.  The third claim alleges CLS committed fraud by misrepresenting material facts when negotiating the terms of the easements in question.  The fourth claim alleges a civil conspiracy against both Dakota Access and CLS in relation to the negotiation of the easements in question.  Defendant Dakota Access filed an answer to the amended complaint.  <u>See</u> Docket No. 7.  In lieu of an answer, CLS filed a motion to dismiss on February 24, 2017.  <u>See</u> Docket No. 10.  Dakota Access filed a motion for judgment on the pleadings on April 6, 2017.  <u>See</u> Docket No. 19.  Both motions have been fully briefed and are ready for decision.

## II.    <u>STANDARD OF REVIEW</u>

There are two motions before the Court.  CLS has filed a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted.  Dakota Access has filed a Rule 12(c) motion for judgment on the pleadings.  "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law[.]"  <u>Ashley Cty. v. Pfizer, Inc.</u>, 552 F.3d 659, 665 (8th Cir. 2009) (quoting <u>Wishnatsky v. Rovner</u>, 433 F.3d 608, 610 (8th Cir. 2006)).  The Court evaluates a motion for judgment on the pleadings under the same standard as a motion brought under Federal Rule of Civil Procedure 12(b)(6).  <u>Id.</u>

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8 (a)(2).  Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates the dismissal of a claim if there has been a failure to state a claim upon which relief can be granted.  In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted

as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The complaint must contain sufficient facts, as opposed to mere conclusions, in order to satisfy the legal requirements of the claim and avoid dismissal. Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007). The court must accept all factual allegations as true, except for legal conclusions or the "formulaic recitation of the elements of a cause of action." Ashcroft, 556 U.S. at 681. Detailed factual allegations are not necessary under the Rule 8 pleading standard, rather a plaintiff must set forth grounds of its entitlement to relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders a naked assertion devoid of further factual enhancement." Ashcroft, 556 U.S. at 678.

The determination of whether a complaint states a claim upon which relief can be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Dismissal will not be granted unless it appears beyond doubt the plaintiff can prove no set of facts entitling plaintiff to relief. Ulrich v. Pope Cnty, 715 F.3d 1054, 1058 (8th Cir. 2013). "[I]n considering a motion to dismiss, the district court may sometimes consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings and exhibits attached to the complaint." Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003).

Fraud claims must comply with the heightened pleading standards of Rule 9(b), which require plaintiffs to plead "the circumstances constituting fraud . . . with particularity." Fed. R. Civ. P. 9(b). "Under Rule 9(b), a plaintiff must plead 'such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was

obtained or given up thereby.'" Abels v. Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir.

2001). Therefore, the plaintiff must typically identify the "who, what, where, when, and how" of the

alleged fraud. United States ex rel. Costner v. URS Consultants, Inc., 317 F.3d 883, 888 (8th Cir.

2003). "This requirement is designed to enable defendants to respond 'specifically, at an early stage

of the case, to potentially damaging allegations of immoral and criminal conduct.'" Abels, 259 F.3d

at 920. "A plaintiff need not show each factor to plead fraud with sufficient particularity. Instead,

a plaintiff must state enough so that the pleadings are not merely conclusory." Cunningham v. PFL

Life Ins. Co., 42 F. Supp. 2d 872, 885 (N.D. Iowa 1999) (quoting Roberts v. Francis, 128 F.3d 647,

651 n.5 (8th Cir. 1997)). "The level of particularity required depends on, inter alia, the nature of the

case and the relationship between the parties." Payne v. United States, 247 F.2d 481, 486 (8th Cir.

1957). "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not

sufficient to satisfy the rule." BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir.

2007) (quoting Commercial Prop. Invs. v. Quality Inns Int'l Inc., 61 F.3d 639, 644 (8th Cir. 1995)).

Claims grounded in fraud are subject to the Rule 9(b)'s heightened pleading requirement as well.

Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC, 781 F.3d 1003, 1010 (8th Cir.

2015).


III.    LEGAL ANALYSIS

        A.      FRAUD CLAIMS

        In counts two and three of the amended complaint, the Plaintiffs allege both Dakota Access

and CLS committed fraud by making misleading statements and misrepresentations to induce the

Plaintiffs into signing the easement agreements. Dakota Access and CLS contend the fraud and/or

misrepresentation claim should be dismissed for three reasons. First, the Defendants contend the Plaintiffs have failed to plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Second, the Defendants contend the Plaintiffs have failed to identify any specific misrepresentations of material fact. Third, the Defendants contend the claims are barred by the integration clause in the easement agreements. All three arguments are persuasive.

### 1.      RULE 9 PLEADING STANDARDS

Dakota Access and CLS contend the amended complaint fails to meet the heightened pleading requirements for fraud. The Defendants allege the Plaintiffs have failed to identify the individuals who made the allegedly fraudulent statements or the recipients of those statements. The Defendants further allege the Plaintiffs have failed to specify the time, location, manner of communication, or the context of the alleged fraudulent representations.

The Plaintiffs argue they have sufficiently identified the party making and receiving the alleged misrepresentations. The Plaintiffs argue it is sufficient to identify CLS as the "entity" who made the misrepresentation and that Dakota Access used CLS to make contact with them. The Plaintiffs argue the names of the actual individuals who made the statements are not required. They claim their allegations are sufficient and detailed enough for the Defendants to respond and prepare a defense, and therefore comply with Rule 9(b).

The purpose of the heightened pleading standard for fraud is to enable defendants to respond specifically, at an early stage of the case, to potentially damaging allegations. See Fed. R. Civ. P. 9(b); Abels, 259 F.3d at 920-21. . Plaintiffs must generally state the who, what, where, when and the context of the alleged fraud. Wivell v. Wells Fargo Bank, N.A., 773 F.3d 887, 898 (8th Cir.

2014). Plaintiffs do not need to state every factor with specificity, but must provide enough factual background so the allegations of fraud are more than conclusory. Id.

The Court finds the Plaintiffs have not pled fraud with the requisite specificity. While the amended complaint adequately describes what statements were made and what was obtained as a result, the amended complaint does not state the names of individual or individuals who allegedly made the fraudulent statements. It is not enough simply to refer to agents or employees of Dakota Access and CLS who negotiated easement agreements with the Plaintiffs as the persons who made the misrepresentations. Wivell, 773 F.3d at 898 (stating Rule 9(b) requires the names of the individuals involved). The names of these individuals are required as well. Id.

However, other details are also missing. The allegation that the fraudulent statements were made in the context of easement negotiations around August of 2014, does not provide enough information about when the statements were made. There are twenty-two individual Plaintiffs in this case. The amended complaint repeatedly refers to the Plaintiffs collectively and fails to explain when any of the individual Plaintiffs spoke to the agents or employees of the Defendants. In addition, the amended complaint does not explain whether the communications were in person, by telephone, email, etc. The circumstances of the fraud must be pled with particularity. Wivell, 773 F.3d at 898. The lack of specificity makes responding to the allegation nothing more than a guessing game for the Defendants and does not allow them to answer in an intelligent fashion. The Court finds that the Plaintiffs have clearly failed to specifically allege who made the fraudulent statements, when the statements were made, and to whom the statements were made in order to comply with Rule 9(b).

## 2.    PAST OR PRESENT MATERIAL FACT

The Defendants contend the allegedly fraudulent statements they made, as set forth in the amended complaint, are merely sales talk or puffery, and the alleged misrepresentations do not constitute fraud because the statements were not representations of past or present material fact. The Plaintiffs maintain the statements are actionable.

> The North Dakota Supreme Court recently described actionable fraud as follows:

> In North Dakota, actionable fraud "includes the making of an affirmative statement of fact, known to be untrue, with intent to deceive another or induce another to enter into a contract." Kary v. Prudential Ins. Co. of America, 541 N.W.2d 703, 705 (N.D. 1996); see also N.D.C.C. § 9–03–08.   Actionable fraud also includes the "suppression of that which is true by one having knowledge or belief of the fact." N.D.C.C. § 9–03–08(3).

> An essential element of fraud is "that there be a false representation of a material fact which either exists in the present or has existed in the past." Sperle v. Weigel, 130 N.W.2d 315, 320 (N.D. 1964). Fraud is never presumed; rather, it must be proven by clear and convincing evidence. Kary, 541 N.W.2d at 705; see also Heart River Partners v. Goetzfried, 2005 ND 149, ¶ 19, 703 N.W.2d 330 ("A party alleging fraud has the burden of proving each element by clear and convincing evidence."). However, because intent to defraud is generally not prone to direct proof, it may be inferred from the circumstances at the time of the transaction. American Bank Ctr. v. Wiest, 2010 ND 251, ¶ 12, 793 N.W.2d 172.

> * * *

> Statements of opinion, such as expressions by the seller commending the item up for sale, are not actionable, even if untrue. Dahl v. Messmer, 2006 ND 166, ¶ 15, 719 N.W.2d 341. These expressions are generally called "puffing" and are considered mere dealer's talk. Id. Statements of opinion, or those amounting to mere puffery, do not constitute fraud. Golden Eye Res., LLC v. Ganske, 2014 ND 179, ¶ 23, 853 N.W.2d 544.

Ward Farms P'ship v. Enerbase Co-op. Res., 863 N.W.2d 868, 872–73 (N.D. 2015).

In this case, it is alleged the following statements were made by the Defendants to the

Plaintiffs in order to persuade them to sign the easement agreements:

- [T]hey had 30 days to sign the easement or they would lose the 20% bonus that would be given to them.

- [T]hat $216 per rod was the best price that would ever be offered and the price would never be more for other landowners in Morton County.

- [T]hat other Morton County Landowners would receive the exact same deal of $216 per rod and also informed the Morton County Landowners that their neighbors would lose the 20% signing bonus if the neighbors did not sign the easement agreement.

- [T]hat if they did not sign the easement, their land would be condemned by eminent domain, they would not receive a better deal by eminent domain, and they would either receive less money or "basically nothing" at all through the eminent domain process.

- [I]f they did not grant the easements and accept the $216 per rod, the pipeline would just be moved to different land.

- [T]hat they should sign the easement agreement right away because the price of oil was going down and if they signed right away they would at least get the easement money even though the pipeline might not be constructed.

See Docket No. 4, ¶¶ 31-36 (Emphasis added).

The making of material factual statements known to be untrue with the intent to induce

another into signing a contract is actionable. Kary, 541 N.W.2d at 705. However, the future is

impossible to predict and for this reason predictions as to future events are not actionable. Each of

the statements at issue in this case is predicated on the predicted happening of a future event. This

is demonstrated by the use of the word "would" to predict or refer to some future happening. Such

predictions are not actionable because they do not relate to past or present facts. Sperle, 139 N.W.2d

at 320. Past and present facts can be verified, but predictions as to future events can only be debated

and nothing is certain until it actually happens.  Unfulfilled promises and or predictions with respect

to future events or the "mere expression of an opinion in the nature of a prophecy as to the happening

on non-happening of a future event is not actionable" fraud.  Id.

Two of the statement at issue relate to an opinion or prediction that easement prices would

never be better and the price of oil would drop.  Predictions of future value, earnings, or profit are

not actionable because the falsity of the statement cannot be determined at the time it was made.

Dahl, 719 N.W.2d at 345.  Predictions of the future price of oil or the best price per rod for

easements fall within the realm of predictions regarding future value, earnings and profits.  Such

statements are not actionable as they are simply sales talk or puffing.

The Plaintiffs are upset their neighbors got a better price when the agent predicted prices

would never be better.  However, the Court finds that opinions and predictions as to what future

prices will be are simply not actionable as fraud.


### 3.      INTEGRATION CLAUSE

The Defendants also contend the integration clauses in the easement agreements bar reliance

on any representations outside what is stated in the contract.  The Plaintiffs contend claims of fraud

are not barred by the inclusion of an integration clause in a contract.

In this case, all but one of the easement agreements include the following integration

provision:

> This Agreement contains the entire agreement between the parties and there are not
> any other representations or statements, verbal or written, that have been made
> modifying, adding to, or changing the terms of this Agreement.

See Docket No. 11-1, ¶ 17.  These agreements are governed by North Dakota law.  See Docket No.

11-1, ¶ 15.

The easement agreement between Dakota Access and Robert J. Slavick and Kathleen M.

Schmaltz, provides as follows:

> Grantor acknowledges that Grantee has made no representations, promises, agreements, guarantees, or inducements to Grantor that are not expressly set forth in this Agreement and any simultaneously executed agreements, and that this Agreement is intended to reflect the entire agreement between the parties. The easement and related rights granted in this Agreement may be assigned, from time to time, in whole, by Grantee, and shall apply to each of the Pipeline Facilities installed by Grantee. This Agreement shall be governed by the law of the State in which the land is situated...

See Docket No. 11-2, ¶ 20.1.

It is undisputed the easement contracts in question are governed by North Dakota law. The

Defendants contend that under North Dakota law, any prior oral promises made during the

negotiation of the easement agreements were superseded by the parties' written agreement, which

in this case contained an integration clause. While other jurisdictions may apply the parole evidence

rule differently in the context of fraud allegations, the North Dakota Supreme Court has squarely

answered the question in manner fatal to the Plaintiffs' claims.

In Evenson v. Quantum Industries, Inc., 687 N.W.2d 241, 244-45 (N.D. 2004), the plaintiff

alleged that he was fraudulently induced to enter into a dealership agreement based on the

defendant's oral representations that the product line would not be sold. This alleged representation

was not contained in the written agreement. North Dakota has codified the principle that a written

contract supersedes oral negotiations. See N.D.C.C. § 9-06-07. This principle, known as the parole

evidence rule, provides "[a]ll preliminary negotiations, conversations, and verbal agreements are

merged into and superseded by the subsequent written contract." Evenson, 687 N.W.2d at 244. The

North Dakota Supreme Court concluded in *Evenson* that "[p]reliminary oral statements and promises related to the terms of the contract do not provide the basis for a fraud claim if there is a subsequent written contract." Evenson, 687 N.W.2d at 245 (emphasis added).

In the present case, the integration clauses contained in the easement agreements render any reliance on prior promises unreasonable. See Crowell v. Campbell Soup Co., 264 F.3d 756, 762 (8th Cir. 2001) (finding any reliance on oral promises unreasonable as a matter of law where the promises were plainly contradicted by the written contract's integration clause).


## B.  UNFAIR TACTICS IN ACQUIRING EASEMENTS

The Plaintiffs allege that Dakota Access violated Section 49-22-16.1 of the North Dakota Century Code which prohibits a public utility from using harassment, threat, intimidation, misrepresentation, deception, fraud, or other unfair tactics when acquiring easements. Section 49-22-16.1 of the North Dakota Century Code provides as follows:

49-22-16.1. Unfair tactics in acquiring land or easements for a facility

1. Any person employed by a public utility to acquire easements for a facility subject to this chapter shall not use any harassment, threat, intimidation, misrepresentation, deception, fraud, or other unfair tactics to induce the owner of the land to be affected by the facility to grant or agree to any easements.

2. If at least five landowners aggrieved by the conduct of a person or persons, acting on behalf of the same utility, acquiring easements for a site or route of a facility allege use of harassment, threat, intimidation, misrepresentation, deception, fraud, or other unfair tactics by the person or persons acquiring or attempting to acquire the easement, an action may be brought in the appropriate district court…..

N.D.C.C. § 49-2-16.1 (2017) (emphasis added).

Specifically, Plaintiffs allege that Dakota Access, through CLS, made false and deceptive

13

statements about the "best price" the company was offering landowners for easements in Morton County. In addition, the Plaintiffs allege that Dakota Access told a number of the Plaintiffs that if they did not sign the easement agreements, their land would be taken by eminent domain and they would receive either less money or "basically nothing" at all.

Dakota Access contends the alleged violation of Section 49-22-16.1 of the North Dakota Century Code fails as a matter of law because CLS is not a person employed by Dakota Access as required by the statute. This contention fails as Dakota Access admitted in it answer that CLS was employed by Dakota Access. See Docket No. 7, ¶ 12.

Dakota Access also contends the statements at issue are nothing more than sales talk or puffery that do not involve misrepresentations of past or present material facts and therefore are not actionable. The Court agrees with Dakota Access. Because this statutory claim sounds in fraud, it is subject to Rule 9(b)'s heightened pleading standards. See Streambend, 781 F.3d at 1010. As explained above in relation to the claims for fraud and/or misrepresentation, the heightened pleading requirements have not been satisfied. Also as explained above, the alleged misrepresentations are not representations of past or present material fact. Thus, this statutory claim fails for the same reasons the claims for fraud and/or misrepresentation fail.

### C. CIVIL CONSPIRACY

Dakota Access and CLS contend civil conspiracy claim in the amended complaint fails as a matter of law because there is not an actionable underlying tort claim to support the civil conspiracy claim. The Court agrees. A civil conspiracy is defined as:

a combination of two or more persons acting in concert to commit an unlawful act

14

or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another and an overt act that results in damages.

Burris Carpet Plus, Inc. v. Burris, 785 N.W.2d 164, 179 (N.D. 2010) (quoting Peterson v. North Dakota Univ. Sys., 678 N.W.2d 163, 174 (N.D. 2004)). "Generally, the underlying act itself must be actionable as a tort claim to support a claim for civil conspiracy." Id. For the reasons discussed above, the fraud and misrepresentation claims and the statutory claim asserted against Dakota Access and CLS fail as a matter of law. Accordingly, the civil conspiracy claim asserted against Dakota Access and CLS necessarily fails as well, because "[d]ismissal of the underlying tort claim defeats the related claim for civil conspiracy." Id.

IV.    **CONCLUSION**

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law. For the reasons set forth above, Contract Land Staff's motion to dismiss (Docket No. 10) and Dakota Access' motion for judgment on the pleadings (Docket No. 19) are **GRANTED**. The motions for hearing (Docket Nos. 14 and 20) are **DENIED**. Let Judgment be entered accordingly.

**IT IS SO ORDERED**.

Dated this 10th day of October, 2017.

/s/  Daniel L. Hovland
Daniel L. Hovland, Chief Judge
United States District Court